**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| VICTOR MEDINA, | : | |
| | | Civil Action No. 10-0570 (WJM) |
| Plaintiff, | : | |
| | | |
| v. | : | **OPINION** |
| | | |
| NOLLEY, et al., | : | |
| | | |
| Defendants. | : | |

**APPEARANCES:**

Plaintiff <u>pro</u> <u>se</u>
Victor M. Medina
East Jersey State Prison
Lock Bag R
Rahway, NJ 07065

**MARTINI**, District Judge

Plaintiff Victor Medina, a prisoner confined at East Jersey State Prison in Rahway, New Jersey, seeks to bring this action <u>in forma pauperis</u> pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.  Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. §1915(g), the Court will grant Plaintiff's application to proceed <u>in forma pauperis</u> pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be

granted, or because it seeks monetary relief from a defendant who is immune from such relief.

## I.   <u>BACKGROUND</u>

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff is confined at East Jersey State Prison.  He alleges that his Due Process rights were violated by when, on July 28, 2008, as a result of an infraction, Plaintiff received the following sanctions for the charge of "Fighting with Another Person" (*.004): 10 days Detention ("lock-up"), 125 days Administrative Segregation; 125 days of Loss of Commutative Time; and 15 days Loss of Recreational Privileges.  Additionally, for the charge of "Conduct Which Disrupts or Interferes with the Secure or Orderly Running of the Correctional Facility," (*.306) Plaintiff received these sanctions: 10 days Detention/Suspended for 90 days, 95 days Administrative Segregation/Suspended for 90 days, 95 days Loss of Commutative Time/Suspended for 90 days, and 15 days Loss of Recreational Privileges/Suspended for 90 days.

On July 29, 2008, the disciplinary decision was appealed to request leniency, reconsideration, and modification of the sentence.  On August 8, 2008, the sanctions were modified in part.  The *.004 charge was modified to 10 days Detention/Time Served, 120 days of Administrative Segregation/Suspended for 60 days, 120 days of Loss of Commutative Time/Suspended for 60 days,

2

and 15 days Loss of Recreational Privileges/Suspended for 60 days.  The *.306 charge was upheld.

As a result, in the interim of the initial decision and the modification of sentencing, Plaintiff served ten days of detention, and was held in Administrative Segregation for four days.  Though Plaintiff's sentence was modified, the charges remained.  Plaintiff alleges that as a consequence he was removed from his job assignment as a paralegal in the law library and his custodial classification was raised.

On October 15, 2008, Plaintiff filed a motion to appeal the administrative decision with the Superior Court of New Jersey, Appellate Division (Docket number A-1080-08T3), challenging the decision because the Disciplinary Hearing Officer did not consider the Plaintiff's assertions that he had fought in self-defense.  On December 19, 2009, the Appellate Division reversed and remanded stating that since the record did not indicate whether the officers had witnessed the initiation of the fight, the hearing officer was obligated to have considered the claim of self-defense.  Plaintiff does not provide any facts regarding decisions subsequent to the remand.

Plaintiff names the following defendants: Gwendolyn Nolley, Charles E. Davis, Michael T. Powers, and Donald Mee.  Plaintiff seeks a declaratory judgment and injunctive relief in the form of reinstatement to his job assignment, annulment of the

reclassification, expungement of the disciplinary conviction, and receipt of supplemental pay.

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a

complaint is "frivolous" is an objective one.  <u>Deutsch v. United States</u>, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint must plead facts sufficient at least to "suggest" a basis for liability.  <u>Spruill v. Gillis</u>, 372 F.3d 218, 236 n.12 (3d Cir. 2004).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" <u>Erickson v. Pardus</u>, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, <u>see</u> <u>Papasan v. Allain</u>, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level ... .

<u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1964-65 (2007) (citations omitted).

The Supreme Court has demonstrated the application of these general standards to a Sherman Act conspiracy claim.

> In applying these general standards to a § 1 [conspiracy] claim, we hold that stating such a claim requires a complaint with enough factual matter (taken

5

as true) to suggest that an agreement was made.  Asking
for plausible grounds to infer an agreement does not
impose a probability requirement at the pleading stage;
it simply calls for enough fact to raise a reasonable
expectation that discovery will reveal evidence of
illegal agreement.  And, of course, a well-pleaded
complaint may proceed even if it strikes a savvy judge
that actual proof of those facts is improbable, and
"that a recovery is very remote and unlikely." ...  It
makes sense to say, therefore, that an allegation of
parallel conduct and a bare assertion of conspiracy
will not suffice.  Without more, parallel conduct does
not suggest conspiracy, and a conclusory allegation of
agreement at some unidentified point does not supply
facts adequate to show illegality.  Hence, when
allegations of parallel conduct are set out in order to
make a § 1 claim, they must be placed in a context that
raises a suggestion of a preceding agreement, not
merely parallel conduct that could just as well be
independent action.

    The need at the pleading stage for allegations
plausibly suggesting (not merely consistent with)
agreement reflects the threshold requirement of Rule
8(a)(2) that the "plain statement" possess enough heft
to "sho[w] that the pleader is entitled to relief."  A
statement of parallel conduct, even conduct consciously
undertaken, needs some setting suggesting the agreement
necessary to make out a § 1 claim; without that further
circumstance pointing toward a meeting of the minds, an
account of a defendant's commercial efforts stays in
neutral territory. ...

Twombly, 127 S.Ct. at 1965-66 (citations and footnotes omitted).

    The Court of Appeals for the Third Circuit has held, in the

context of a § 1983 civil rights action, that the Twombly

pleading standard applies outside the § 1 antitrust context in

which it was decided.  See Phillips v. County of Allegheny, 515

F.3d 224, 234 (3d Cir. 2008) ("we decline at this point to read

Twombly so narrowly as to limit its holding on plausibility to

the antitrust context").

6

Context matters in notice pleading.  Fair notice under
Rule 8(a)(2) depends on the type of case -- some
complaints will require at least some factual
allegations to make out a "showing that the pleader is
entitled to relief, in order to give the defendant fair
notice of what the ... claim is and the grounds upon
which it rests."  Indeed, taking <u>Twombly</u> and the
Court's contemporaneous opinion in <u>Erickson v. Pardus</u>,
127 S.Ct. 2197 (2007), together, we understand the
Court to instruct that a situation may arise where, at
some point, the factual detail in a complaint is so
undeveloped that it does not provide a defendant the
type of notice of claim which is contemplated by
Rule 8.  Put another way, in light of <u>Twombly</u>, Rule
8(a)(2) requires a "showing" rather than a blanket
assertion of an entitlement to relief.  We caution that
without some factual allegation in the complaint, a
claimant cannot satisfy the requirement that he or she
provide not only "fair notice," but also the "grounds"
on which the claim rests.

<u>Phillips</u>, 515 F.3d at 232 (citations omitted).

More recently, the Supreme Court has emphasized that, when
assessing the sufficiency of <u>any</u> civil complaint, a court must
distinguish factual contentions -- which allege behavior on the
part of the defendant that, if true, would satisfy one or more
elements of the claim asserted -- and "[t]hreadbare recitals of
the elements of a cause of action, supported by mere conclusory
statements."  <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009).
Although the Court must assume the veracity of the facts asserted
in the complaint, it is "not bound to accept as true a legal
conclusion couched as a factual allegation."  <u>Id.</u> at 1950.  Thus,
"a court considering a motion to dismiss can choose to begin by
identifying pleadings that, because they are no more than
conclusions, are not entitled to the assumption of truth."  <u>Id.</u>

7

> Therefore, after <u>Iqbal</u>, when presented with a
> motion to dismiss for failure to state a claim,
> district courts should conduct a two-part analysis.
> First, the factual and legal elements of a claim should
> be separated.  The District Court must accept all of
> the complaint's well-pleaded facts as true, but may
> disregard any legal conclusions.  Second, a District
> Court must then determine whether the facts alleged in
> the complaint are sufficient to show that the plaintiff
> has a "plausible claim for relief."  In other words, a
> complaint must do more than allege the plaintiff's
> entitlement to relief.  A complaint has to "show" such
> an entitlement with its facts.  <u>See</u> <u>Phillips</u>, 515 F.3d
> at 234-35.  As the Supreme Court instructed in <u>Iqbal</u>,
> "[w]here the well-pleaded facts do not permit the court
> to infer more than the mere possibility of misconduct,
> the complaint has alleged-but it has not
> 'show[n]'-'that the pleader is entitled to relief.'"
> This "plausibility" determination will be "a
> context-specific task that requires the reviewing court
> to draw on its judicial experience and common sense."

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009)

(citations omitted).

Where a complaint can be remedied by an amendment, a

district court may not dismiss the complaint with prejudice, but

must permit the amendment.  <u>Denton v. Hernandez</u>, 504 U.S. 25, 34

(1992); <u>Grayson v. Mayview State Hospital</u>, 293 F.3d 103, 108

(3d).

### III.  <u>SECTION 1983 ACTIONS</u>

A plaintiff may have a cause of action under 42 U.S.C.

§ 1983 for certain violations of his constitutional rights.

Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within

the jurisdiction thereof to the deprivation of any
rights, privileges, or immunities secured by the
Constitution and laws, shall be liable to the party
injured in an action at law, suit in equity, or other
proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must
allege, first, the violation of a right secured by the
Constitution or laws of the United States and, second, that the
alleged deprivation was committed or caused by a person acting
under color of state law.  West v. Atkins, 487 U.S. 42, 48
(1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir.
1994).

Local government units and supervisors are not liable under
§ 1983 solely on a theory of respondeat superior.  See City of
Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v.
New York City Department of Social Services, 436 U.S. 658, 690-
91, 694 (1978) (municipal liability attaches only "when execution
of a government's policy or custom, whether made by its lawmakers
or by those whose edicts or acts may fairly be said to represent
official policy, inflicts the injury" complained of); Natale v.
Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d
Cir. 2003).  "A defendant in a civil rights action must have
personal involvement in the alleged wrongs, liability cannot be
predicated solely on the operation of respondeat superior.
Personal involvement can be shown through allegations of personal
direction or of actual knowledge and acquiescence."  Rode v.

9

Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).  Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

To establish municipal liability under § 1983, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990), quoted in Blanche Rd. Corp. v. Bensalem Twp., 57 F.3d 253, 269 n.16 (3d Cir.), cert. denied, 516 U.S. 915 (1995), and quoted in Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d 118, 126 (3d Cir. 2000).  A plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the plaintiff's injury. Monell, 436 U.S. at 689.

> A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir. 1996) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality opinion)).  A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." [Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 404 (1997).]

> There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983.  The first is where "the appropriate officer or entity promulgates a generally applicable

statement of policy and the subsequent act complained
of is simply an implementation of that policy."  The
second occurs where "no rule has been announced as
policy but federal law has been violated by an act of
the policymaker itself."  Finally, a policy or custom
may also exist where "the policymaker has failed to act
affirmatively at all, [though] the need to take some
action to control the agents of the government 'is so
obvious, and the inadequacy of existing practice so
likely to result in the violation of constitutional
rights, that the policymaker can reasonably be said to
have been deliberately indifferent to the need.'"

Natale, 318 F.3d at 584 (footnote and citations omitted).

Finally, a § 1983 action brought against a person in his or
her official capacity "generally represent[s] only another way of
pleading an action against an entity of which an officer is an
agent."  Monell, 436 U.S. at 690 n.55.  "[I]n an official-
capacity action, ... a governmental entity is liable under § 1983
only when the entity itself is a 'moving force' behind the
deprivation; thus, in an official capacity suit the entity's
'policy or custom' must have played a part in the violation of
federal law."  Kentucky v. Graham, 473 U.S. 159, 166 (1985)
(internal quotation marks and citations omitted).

IV.  ANALYSIS

Plaintiff's claims that his constitutional rights were
violated when he received disciplinary sanctions, including
confinement in lock-up, fail to state a claim under the Due
Process Clause of the Fourteenth Amendment.

A liberty interest protected by the Due Process Clause may
arise from either of two sources:  the Due Process Clause itself

11

or State law.  See Hewitt v. Helms, 459 U.S. 460, 466 (1983);

Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir.

1999).

With respect to convicted and sentenced prisoners, "[a]s

long as the conditions or degree of confinement to which the

prisoner is subjected is within the sentence imposed upon him and

is not otherwise violative of the Constitution, the Due Process

Clause does not in itself subject an inmate's treatment by prison

authorities to judicial oversight." Montanye v. Haymes, 427 U.S.

236, 242 (1976), quoted in Hewitt, 459 U.S. at 468 and Sandin v.

Conner, 515 U.S. 472, 480 (1995).  Cf. Washington v. Harper, 494

U.S. 210, 221-22 (1990)(prisoner has liberty interest under the

Due Process Clause in freedom from involuntary administration of

psychotropic drugs); Vitek v. Jones, 445 U.S. 480, 493-94

(1980)(prisoner has liberty interest under the Due Process Clause

in freedom from involuntary transfer to state mental hospital

coupled with mandatory treatment for mental illness, a punishment

carrying "stigmatizing consequences" and "qualitatively

different" from punishment characteristically suffered by one

convicted of a crime).

"Discipline by prison officials in response to a wide range

of misconduct falls within the expected parameters of the

sentence imposed by a court of law." Sandin, 515 U.S. at 485

(upholding prisoner's sentence of 30 days' disciplinary

segregation following a hearing at which he was not permitted to produce witnesses). See also Asquith, 186 F.3d at 410-11 (no liberty interest under the Due Process Clause in remaining in halfway house).

States, however, may confer on prisoner liberty interests that are protected by the Due Process Clause. "But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484 (finding that disciplinary segregation conditions which effectively mirrored those of administrative segregation and protective custody were not "atypical and significant hardships" in which a state conceivably might create liberty interest). See also Asquith, 186 F.3d at 411-12 (return to prison from halfway house did not impose "atypical and significant hardship" on prisoner and, thus, did not deprive him of protected liberty interest). In Griffin v. Vaughn, 112 F.3d 703, 708-09 (3d Cir. 1997), the Court of Appeals for the Third Circuit held that a 15-month confinement in administrative custody did not impose "atypical and significant hardship," even in the face of state regulation requiring release to the general population after 20 days in the absence of a

13

misconduct charge.  The Court of Appeals did note, however, that
if an inmate is committed to undesirable conditions for an
atypical period of time in violation of state law, that is a
factor to be considered in determining whether the prisoner has
been subjected to "atypical and significant hardship" triggering
due process protection.  Id.

        As in Sandin, which upheld a 30 days disciplinary
segregation sentence which followed a hearing at which the
plaintiff was not permitted to produce witnesses, here,
Plaintiff's initial sentence and subsequent modifications did not
impose upon him any unconstitutional hardship.  The disciplinary
sanctions that Plaintiff received did not amount to "atypical and
significant hardship."  Once the sentence was modified, he was
immediately removed from Administrative Segregation within four
days.  Accordingly, Plaintiff has failed to state a claim for a
constitutional violation based upon those sanctions.
Additionally, the conviction was not overturned, thus Plaintiff's
additional requests for relief hold no weight.

                        V.  CONCLUSION

        For the reasons set forth above, the Complaint must be
dismissed for failure to state a claim.  An appropriate order
follows.

                                s/William J. Martini

                                _____
                                William J. Martini

                                14

Dated:10/29/10                              United States District Judge